Robert V. Prongay (SBN 270796)
*rprongay@glancylaw.com*
Charles H. Linehan (SBN 307439)
*clinehan@glancylaw.com*
Pavithra Rajesh (SBN 323055)
*prajesh@glancylaw.com*
GLANCY PRONGAY WOLKE & ROTTER LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HEMALATHA VELANKI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HIMS & HERS HEALTH, INC., ANDREW DUDUM, and OLUYEMI OKUPE,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

Plaintiff Hemalatha Velanki ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Hims & Hers Health, Inc. ("Hims" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Hims; and (c) review of other publicly available information concerning Hims.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Hims securities between August 4, 2025 and July 29, 2026, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Hims operates a health and wellness platform that connects consumers to licensed healthcare professionals. The Company offers a range of curated prescription and non-prescription health and wellness products and services available to purchase on its websites and mobile application directly by customers.

3. On July 29, 2026, during market hours, the Federal Trade Commission ("FTC") announced it had filed a lawsuit against Hims "alleging that the telehealth provider shared consumers' sensitive health information about medical conditions with third-party advertising platforms despite claiming its services maintain consumers' privacy and deceives users about its billing and cancellation practices." According to the FTC's complaint, Hims engages in other deceptive advertising practices, including failing to "clearly disclose that it charges consumers for prescriptions almost immediately after they submit an intake form, despite telling consumers that they will be able to consult with a medical provider to find a treatment that is 'right for them.'" The complaint further alleges that, contrary to its promises that the platform is "100% online, private, and secure," Hims "shared sensitive health information with third-party advertising companies and platforms . . . such as Meta Platforms, Inc. ('Meta') and Snap Inc. ('Snap')."

4. On this news, shares of Hims declined $4.32, or 14.73%, to close at $25.00 on July 29, 2026, on unusually heavy trading volume.

5. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (1) the Company shared consumers' health information with third-party advertising platforms; (2) the Company charges consumers for prescriptions almost immediately after they submit an intake form, despite telling consumers that they will be able to consult with a medical provider to find a treatment that is "right for them;" (3) the foregoing conduct subjected the Company to regulatory scrutiny; (4) as a result of the foregoing, the Company was reasonably likely to incur fees and penalties; and (5) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), as amended by the Private Securities Litigation Reform Act of 1995, and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(a)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

10. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

11. Plaintiff Hemalatha Velanki, as set forth in the accompanying certification, incorporated by reference herein, purchased Hims securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12. Defendant Hims is incorporated under the laws of Delaware with its principal executive offices located in San Francisco, California. Hims's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "HIMS."

13. Defendant Andrew Dudum ("Dudum") was the Company's Chief Executive Officer ("CEO") at all relevant times.

14. Defendant Oluyemi Okupe ("Okupe") was the Company's Chief Financial Officer ("CFO") at all relevant times.

15. Defendants Dudum and Okupe (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16. Hims operates a health and wellness platform that connects consumers to licensed healthcare professionals. The Company offers a range of curated prescription and non-prescription health and wellness products and services available to purchase on its websites and mobile application directly by customers.

### Materially False and Misleading Statements Issued During the Class Period

17. The Class Period begins on August 4, 2025. On that day, the Company submitted its quarterly report for the period ended June 30, 2025 on a Form 10-Q filed with the SEC. The quarterly report claimed that the Company "developed and maintain policies and procedures to protect" private health information, "including the adoption of administrative, physical and technical safeguards." It also purported to warn of risks which "***could***" or "***may***" negatively impact the Company, including risks related to the "use, disclosure, and other processing of personally identifiable information."[1] Specifically, the quarterly report stated as follows, in relevant part:

> ***Our use, disclosure, and other processing of personally identifiable information, including health information, is subject to federal, state, and foreign privacy and security regulations, and our failure to comply with those regulations or to adequately secure the information we hold could result in significant liability or reputational harm and, in turn, a material adverse effect on our customers, the Affiliated Medical Groups and/or their Providers, the Pharmacies, our revenue, our business, and/or our financial condition.***
>
> * * *
>
> ***We have developed and maintain policies and procedures with respect to health information and personal information that we use or disclose in connection with our operations, including the adoption of administrative, physical, and technical safeguards to protect such information.*** As our business operations continue to develop, including through the launch of new product offerings or the development of new services, we may collect additional sensitive health and personal information from our customers that could create additional compliance obligations and may increase our exposure to compliance and regulatory risks regarding the protection and dissemination of such information.
>
> * * *

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

> ***From time to time, we are subject to legal proceedings in the ordinary course of business, which can include intellectual property disputes or claims related to our marketing or sale of products, any of which may be costly to defend and could materially harm our business and results of operations.***
>
> * * *
>
> For example, in October 2023, the Federal Trade Commission (the "FTC") issued to us a Civil Investigative Demand requesting information as part of a non-public investigation. As of the date of this Quarterly Report on Form 10-Q, the FTC has not communicated to us any potential conclusions or findings the FTC may make with respect to its investigation. While we do not expect the outcome of this investigation to have a material impact on our business or operations, there can be no assurance that our expectations will prove correct.

18. On November 3, 2025, the Company submitted its quarterly report for the period ended September 30, 2025 on a Form 10-Q filed with the SEC. The quarterly report claimed the Company has "developed and maintain policies and procedures to protect" users private health information, "including the adoption of administrative, physical and technical safeguards." It also purported to warn of risks which "***could***" or "***may***" negatively impact the Company, including risks related to the "use, disclosure, and other processing of personally identifiable information." Specifically, the quarterly report stated as follows, in relevant part:

> ***Our use, disclosure, and other processing of personally identifiable information, including health information, is subject to federal, state, and foreign privacy and security regulations, and our failure to comply with those regulations or to adequately secure the information we hold could result in significant liability or reputational harm and, in turn, a material adverse effect on our customers, the Affiliated Medical Groups and/or their Providers, the Pharmacies, our revenue, our business, and/or our financial condition.***
>
> * * *
>
> ***We have developed and maintain policies and procedures with respect to health information and personal information that we use or disclose in connection with our operations, including the adoption of administrative, physical, and technical safeguards to protect such information.*** As our business operations continue to develop, including through the launch of new product offerings or the development of new services, we may collect additional sensitive health and personal information from our customers that could create additional compliance obligations and may increase our exposure to compliance and regulatory risks regarding the protection and dissemination of such information.
>
> * * *
>
> ***From time to time, we are subject to legal proceedings in the ordinary course of business, which can include intellectual property disputes or claims related to our marketing or sale of products, any of which may be costly to defend and could materially harm our business and results of operations.***

* * *

For example, in October 2023, the Federal Trade Commission (the "FTC") issued to us a Civil Investigative Demand requesting information as part of a non-public investigation. As of the date of this Quarterly Report on Form 10-Q, the FTC has not communicated to us any potential conclusions or findings the FTC may make with respect to its investigation. While we do not expect the outcome of this For example, in October 2023, the Federal Trade Commission (the "FTC") issued to us a Civil Investigative Demand requesting information as part of a non-public investigation. As of the date of this Quarterly Report on Form 10-Q, the FTC has not communicated to us any potential conclusions or findings the FTC may make with respect to its investigation. While we do not expect the outcome of this investigation to have a material impact on our business or operations, there can be no assurance that our expectations will prove correct.

19. On February 23, 2026, the Company submitted its annual report for the fiscal year ended December 31, 2025 on a Form 10-K filed with the SEC. The annual report purported to warn of risks which "***could***" or "***may***" negatively impact the Company, including risks related to the "use, disclosure, and other processing of personally identifiable information." Specifically, the annual report stated, in relevant part:

> ***Our use, disclosure, and other processing of personally identifiable information, including health information, is subject to federal, provincial, state, and foreign privacy and security regulations, and our failure to comply with those regulations or to adequately secure the information we hold could result in significant liability or reputational harm and, in turn, a material adverse effect on our customers, the Affiliated Medical Groups and/or their Providers, the Pharmacies, our revenue, our business, and/or our financial condition.***
>
> * * *
>
> ***We have developed and maintain policies and procedures with respect to health information and personal information that we use or disclose in connection with our operations,*** including the adoption of administrative, physical, and technical safeguards to protect such information. As our business operations continue to develop, including through the launch of new product offerings or the development of new services, we may collect additional sensitive health and personal information from our customers that could create additional compliance obligations and may increase our exposure to compliance and regulatory risks regarding the protection and dissemination of such information.
>
> * * *
>
> ***In October 2023, the Federal Trade Commission (the "FTC") issued to the Company a Civil Investigative Demand requesting information regarding the Company's privacy, advertising, and cancellation practices as part of a non-public investigation.*** The Company believes it has substantially completed providing responses to the FTC's information requests. As of the date of this Annual Report on Form 10-K, the FTC has not communicated to the Company any potential conclusions or findings the FTC may make with respect to its investigation. While the Company does not expect the outcome of this investigation to have a material

impact on its business or operations, there can be no assurance that its expectations will prove correct. At this time, the Company is unable to estimate the possible loss or range of loss, if any, associated with this matter.

20. On May 11, 2026, the Company submitted its quarterly report for the period ended March 31, 2026 on a Form 10-Q filed with the SEC. As to risks related to the "use, disclosure, and other processing of personally identifiable information," the quarterly report stated, in relevant part:

> ***Our use, disclosure, and other processing of personally identifiable information, including health information, is subject to federal, provincial, state, and foreign privacy and security regulations, and our failure to comply with those regulations or to adequately secure the information we hold could result in significant liability or reputational harm and, in turn, a material adverse effect on our customers, the Affiliated Medical Groups and/or their Providers, the Pharmacies, our revenue, our business, and/or our financial condition.***
>
> * * *
>
> ***We have developed and maintain policies and procedures with respect to health information and personal information that we use or disclose in connection with our operations, including the adoption of administrative, physical, and technical safeguards to protect such information.*** As our business operations continue to develop, including through the launch of new product offerings or the development of new services, we may collect additional sensitive health and personal information from our customers that could create additional compliance obligations and may increase our exposure to compliance and regulatory risks regarding the protection and dissemination of such information.
>
> * * *
>
> ***In October 2023, the Federal Trade Commission (the "FTC") issued to the Company a Civil Investigative Demand (the "CID") requesting information regarding the Company's privacy, advertising, and cancellation practices as part of a non-public investigation related to the Restore Online Shoppers' Confidence Act ("ROSCA").*** The Company responded cooperatively to the CID and related follow-up requests from the FTC. In April 2026, the FTC communicated to the Company its findings with respect to its investigation. The FTC and the Company are engaged in active settlement negotiations, and the outcome is uncertain. There is a reasonable possibility that the final liability could be materially higher than the amount accrued. While the Company believes that it has meritorious arguments and would pursue a vigorous defense if the matter were to proceed to litigation, the Company has submitted a substantive offer to the FTC to settle this matter without admission of liability or wrongdoing. There can be no assurance, however, that this settlement offer will be accepted or that any current or future discussions with the FTC to resolve this inquiry will be successful. The Company has recorded an accrual for estimated probable losses of $15.0 million for this matter as of March 31, 2026 within accrued liabilities on the unaudited condensed consolidated balance sheets and as a general and administrative expense on the unaudited condensed consolidated statements of operations and comprehensive (loss) income for the three months ended March 31, 2026, and such estimate may be subject to change based on additional information. The Company is unable at this time to reasonably estimate any range of loss above the amount accrued due to a number of unknown factors that

may materially affect the resolution of the FTC matter and its impacts on the Company's business, results of operations, and financial condition.

21. The above statements identified in ¶¶ 17-20 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (1) the Company shared consumers' health information with third-party advertising platforms; (2) the Company charges consumers for prescriptions almost immediately after they submit an intake form, despite telling consumers that they will be able to consult with a medical provider to find a treatment that is "right for them;" (3) the foregoing conduct subjected the Company to regulatory scrutiny; (4) as a result of the foregoing, the Company was reasonably likely to incur fees and penalties; and (5) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

22. On July 29, 2026, during market hours, the Federal Trade Commission announced it had filed a lawsuit against Hims, "alleging that the telehealth provider shared consumers' sensitive health information about medical conditions with third-party advertising platforms despite claiming its services maintain consumers' privacy and deceives users about its billing and cancellation practices." The press release announcing the complaint states the FTC accuses Hims of "deceptive and unlawful privacy practices," including that "Hims shared consumers' health information with Meta, Snap and other third parties." Specifically, the press release stated, in relevant part:

> **FTC and States Act Against Hims & Hers for Deceptive and Unlawful Privacy Practices**
>
> ***Complaint alleges telehealth provider shared consumers' sensitive health information with third-party advertising platforms despite promising patient privacy***
>
> * * *
>
> The Federal Trade Commission, joined by Utah and California, by and through Los Angeles County Counsel, today sued Hims & Hers alleging that the telehealth provider ***shared consumers' sensitive health information about medical conditions with third-party advertising platforms despite claiming its services maintain consumers' privacy and deceives users about its billing and cancellation practices.***

In a complaint filed in federal court, the FTC and its state and local partners allege that Hims & Hers (Hims) ***fails to clearly disclose that it charges consumers for prescriptions almost immediately after they submit an intake form, despite telling consumers that they will be able to consult with a medical provider to find a treatment that is "right for them."*** The FTC also alleges that the company has made it difficult for consumers to cancel subscriptions and misled consumers about keeping their health information private. ***The FTC alleges that Hims shared consumers' health information with Meta, Snap and other third parties.***

* * *

In advertisements and on its website, Hims has claimed that consumers can "connect" and consult with a medical provider through Hims to determine whether they need prescription medication. When consumers fill out their intake form, they are asked to provide their billing information despite assurances that they will not be charged unless and until medications are prescribed, according to the complaint.

The FTC alleges, however, that Hims does not give most consumers a consultation with a provider. Instead, ***by submitting their intake form, most consumers will unknowingly be charged for and subscribed to a prescription treatment without having a chance to review or approve it***. According to the complaint, Hims enrolls consumers in recurring subscription plans for those treatments shortly after receiving consumers' intake forms.

In addition, the complaint alleges that Hims fails to clearly and conspicuously inform consumers when their prescriptions will be refilled each month, making it difficult to cancel before the next billing cycle.

* * *

***In addition, the complaint alleges that Hims shared consumers' sensitive health information with third-party advertising platforms such as Meta and Snap despite promising to protect patient privacy. Hims shared its consumers' health information with advertising platforms by sharing lists of certain customers with those companies. Hims also shared consumers' health information via third-party tracking technologies that automatically shared certain "Events"—the actions of visitors on Hims' website—with those companies.***

The FTC alleges these practices have violated the FTC Act and the Restore Online Shoppers' Confidence Act, which prohibits deceptive billing and subscription practices. Utah alleges violations of the Utah Consumer Sales Practices Act, and California alleges violations of California's False Advertising and Unfair Competition Laws.

23. The case is captioned *FTC et al. v. Hims & Hers Health, Inc.*, Case No. 3:26-cv-07871 (N.D. Cal.). According to the FTC's complaint, the Company places "pixels" from at least several advertising platforms to collect and share protected health information:

In addition to Meta and Snap, Hims placed pixels from at least the following Advertising Platforms on its website: Microsoft (Bing Pixel and Bing Image Pixel); Google (Google Ads Pixel and Google Ads S2S Pixel); Criteo (Criteo Pixel); MediaBids.com (MediaBids Pixel); PartnerCentric (PartnerCentric Pixel); PebblePost.com (PebblePost Pixel); Pinterest (Pinterest Pixel); Podsights (now

> known as Spotify Ad Analytics - Podsights_iHeartMedia Pixel); Reddit (Reddit Pixel); StackAdapt (StackAdapt Pixel); TikTok (TikTok s2s Pixel); the Trade Desk (Trade Desk Pixel); and X (formerly known as Twitter - Twitter Pixel). As with the Meta and Snap pixels, many of these pixels captured and shared Users' health information by way of similar pixel tracking events that captured [REDACTED]—all of which was contrary to Hims' privacy promises.

24. According to the FTC's complaint, Hims engages in other deceptive advertising practices, including failing to "clearly disclose that it charges consumers for prescriptions almost immediately after they submit an intake form, despite telling consumers that they will be able to consult with a medical provider to find a treatment that is 'right for them.'"

25. On this news, shares of Hims declined $4.32 or 14.73% to close at $25.00 on July 29, 2026, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Hims securities between August 4, 2025 and July 29, 2026, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

27. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Hims's shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Hims shares were traded publicly during the Class Period on the NYSE. Record owners and other members of the Class may be identified from records maintained by Hims or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

29. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

30. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Hims; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

31. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

32. The market for Hims's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Hims's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Hims's securities relying upon the integrity of the market price of the Company's securities and market information relating to Hims, and have been damaged thereby.

33. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Hims's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Hims's business, operations, and prospects as alleged herein.

34. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Hims's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## <u>LOSS CAUSATION</u>

35. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

36. During the Class Period, Plaintiff and the Class purchased Hims's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## <u>SCIENTER ALLEGATIONS</u>

37. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were

materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Hims, their control over, and/or receipt and/or modification of Hims's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Hims, participated in the fraudulent scheme alleged herein.

**APPLICABILITY OF PRESUMPTION OF RELIANCE**

**(FRAUD-ON-THE-MARKET DOCTRINE)**

38. The market for Hims's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Hims's securities traded at artificially inflated prices during the Class Period. On July 6, 2026, the Company's share price closed at a Class Period high of $38.28 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Hims's securities and market information relating to Hims, and have been damaged thereby.

39. During the Class Period, the artificial inflation of Hims's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Hims's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Hims and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

40. At all relevant times, the market for Hims's securities was an efficient market for the following reasons, among others:

(a) Hims shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, Hims filed periodic public reports with the SEC and/or the NYSE;

(c) Hims regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Hims was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

41. As a result of the foregoing, the market for Hims's securities promptly digested current information regarding Hims from all publicly available sources and reflected such information in Hims's share price. Under these circumstances, all purchasers of Hims's securities during the Class Period suffered similar injury through their purchase of Hims's securities at artificially inflated prices and a presumption of reliance applies.

42. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of

the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

**NO SAFE HARBOR**

43. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Hims who knew that the statement was false when made.

**FIRST CLAIM**

**Violation of Section 10(b) of The Exchange Act and**

**Rule 10b-5 Promulgated Thereunder**

**Against All Defendants**

44. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

45. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Hims's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

46. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Hims's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

47. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Hims's financial well-being and prospects, as specified herein.

48. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Hims's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Hims and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

49. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management

team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

50. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Hims's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

51. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Hims's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Hims's securities during the Class Period at artificially high prices and were damaged thereby.

52. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Hims was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class

would not have purchased or otherwise acquired their Hims securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

53. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**

**Violation of Section 20(a) of The Exchange Act**

**Against the Individual Defendants**

55. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

56. Individual Defendants acted as controlling persons of Hims within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

58. As set forth above, Hims and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: September 1, 2026

**GLANCY PRONGAY WOLKE & ROTTER LLP**
By: *\/s/ Pavithra Rajesh*
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
rprongay@glancylaw.com
clinehan@glancylaw.com
prajesh@glancylaw.com

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff Hemalatha Velanki*

**SWORN CERTIFICATION OF PLAINTIFF**

Hims & Hers Health, Inc., SECURITIES LITIGATION

I, Hemalatha Velanki, certify:

1. I have reviewed the Complaint, adopt its allegations, and authorize its filing and/or the filing of a lead plaintiff motion on my behalf.

2. I did not purchase Hims & Hers Health, Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under federal securities law.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Hims & Hers Health, Inc., during the class period set forth in the Complaint are as follows:

   See Attached Transactions

5. I have not sought to serve, nor served, as a representative party on behalf of a class in any action under the federal securities laws (15 U.S. Code, Chapter 2B; and 15 U.S. Code, Chapter 2A, Subchapter I) during the last three years.

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury under the laws of the United States of America that the foregoing are true and correct statements.

Dated: 8/17/2026

Signed by:
Hemalatha Velanki
AF1798A47F0248F...

Hemalatha Velanki

**Hemalatha Velanki's Transactions in Hims & Hers Health, Inc. (HIMS)**

| Settlement Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 10/17/2025 | Bought | 1 | $57.0000 |
| 10/20/2025 | Bought | 1 | $55.4071 |
| 10/20/2025 | Bought | 1 | $55.4999 |
| 10/20/2025 | Bought | 1 | $55.0000 |
| 10/20/2025 | Bought | 1 | $54.0000 |
| 10/20/2025 | Bought | 1 | $53.0000 |
| 10/20/2025 | Bought | 1 | $52.0000 |
| 10/20/2025 | Bought | 1 | $51.5000 |
| 10/20/2025 | Bought | 1 | $51.0000 |
| 10/20/2025 | Bought | 1 | $50.0000 |
| 10/20/2025 | Bought | 1 | $50.1000 |
| 10/21/2025 | Bought | 1 | $51.5000 |
| 10/21/2025 | Bought | 1 | $51.0000 |
| 10/22/2025 | Bought | 1 | $50.5000 |
| 10/22/2025 | Bought | 1 | $50.0000 |
| 10/22/2025 | Bought | 1 | $49.8000 |
| 10/22/2025 | Bought | 1 | $49.7500 |
| 10/22/2025 | Bought | 1 | $49.7000 |
| 10/22/2025 | Bought | 1 | $49.6000 |
| 10/22/2025 | Bought | 1 | $49.5000 |
| 10/22/2025 | Bought | 5 | $49.0000 |
| 10/22/2025 | Bought | 1 | $49.0000 |
| 10/23/2025 | Bought | 1 | $49.0500 |
| 10/23/2025 | Bought | 5 | $49.0000 |
| 10/23/2025 | Bought | 5 | $48.5000 |
| 10/23/2025 | Bought | 5 | $48.0000 |
| 10/23/2025 | Bought | 5 | $48.0000 |
| 10/23/2025 | Bought | 3 | $47.5000 |
| 10/23/2025 | Bought | 5 | $47.0000 |
| 10/23/2025 | Bought | 5 | $47.0000 |
| 10/23/2025 | Bought | 1 | $46.5000 |
| 10/23/2025 | Bought | 1 | $46.5000 |
| 10/23/2025 | Bought | 1 | $46.4000 |
| 10/23/2025 | Bought | 1 | $46.3000 |
| 10/23/2025 | Bought | 1 | $46.2000 |
| 10/24/2025 | Bought | 1 | $48.5000 |
| 10/24/2025 | Bought | 1 | $48.4200 |
| 10/24/2025 | Bought | 1 | $48.4000 |
| 10/24/2025 | Bought | 1 | $48.4500 |
| 10/27/2025 | Bought | 1 | $48.9841 |
| 10/27/2025 | Bought | 5 | $48.9000 |
| 10/27/2025 | Bought | 5 | $48.9500 |

| Settlement Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 10/27/2025 | Bought | 1 | $48.8000 |
| 10/28/2025 | Bought | 5 | $48.5000 |
| 10/28/2025 | Bought | 5 | $48.5000 |
| 10/28/2025 | Bought | 5 | $48.2500 |
| 10/28/2025 | Bought | 1 | $48.3000 |
| 10/28/2025 | Bought | 1 | $48.2900 |
| 10/28/2025 | Bought | 1 | $48.2500 |
| 10/28/2025 | Bought | 1 | $48.3700 |
| 10/29/2025 | Bought | 1 | $48.2000 |
| 10/29/2025 | Bought | 1 | $48.1000 |
| 10/29/2025 | Bought | 1 | $48.0000 |
| 10/29/2025 | Bought | 1 | $47.6000 |
| 10/29/2025 | Bought | 1 | $48.0000 |
| 10/29/2025 | Bought | 1 | $47.5000 |
| 10/29/2025 | Bought | 1 | $47.4000 |
| 10/29/2025 | Bought | 1 | $47.3000 |
| 10/29/2025 | Bought | 1 | $47.2000 |
| 10/29/2025 | Bought | 5 | $47.0000 |
| 10/29/2025 | Bought | 5 | $47.0000 |
| 10/30/2025 | Bought | 1 | $46.5000 |
| 10/30/2025 | Bought | 1 | $46.5000 |
| 10/30/2025 | Bought | 1 | $46.4000 |
| 10/30/2025 | Bought | 1 | $47.9295 |
| 10/30/2025 | Bought | 1 | $47.0000 |
| 10/30/2025 | Bought | 1 | $46.1000 |
| 10/31/2025 | Bought | 1 | $46.0000 |
| 10/31/2025 | Bought | 1 | $45.8000 |
| 10/31/2025 | Bought | 1 | $45.7500 |
| 10/31/2025 | Bought | 1 | $45.5000 |
| 10/31/2025 | Bought | 1 | $45.0000 |
| 10/31/2025 | Bought | 1 | $45.0000 |
| 10/31/2025 | Bought | 1 | $44.0000 |
| 10/31/2025 | Bought | 1 | $44.0000 |
| 11/4/2025 | Bought | 1 | $46.7600 |
| 11/4/2025 | Bought | 1 | $46.7500 |
| 11/4/2025 | Bought | 1 | $46.5000 |
| 11/4/2025 | Bought | 1 | $46.0000 |
| 11/4/2025 | Bought | 1 | $46.0000 |
| 11/4/2025 | Bought | 1 | $46.0000 |
| 11/4/2025 | Bought | 1 | $45.0000 |
| 11/4/2025 | Bought | 1 | $44.8000 |
| 11/4/2025 | Bought | 1 | $44.7000 |
| 11/4/2025 | Bought | 1 | $44.6000 |
| 11/4/2025 | Bought | 1 | $44.5000 |

| Settlement Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 11/4/2025 | Bought | 1 | $44.4000 |
| 11/4/2025 | Bought | 1 | $44.3000 |
| 11/4/2025 | Bought | 1 | $44.2000 |
| 11/4/2025 | Bought | 1 | $44.1000 |
| 11/4/2025 | Bought | 1 | $44.1980 |
| 11/4/2025 | Bought | 1 | $44.3350 |
| 11/4/2025 | Bought | 5 | $44.3990 |
| 11/4/2025 | Bought | 5 | $44.4888 |
| 11/4/2025 | Bought | 5 | $44.5700 |
| 11/4/2025 | Bought | 10 | $44.4900 |
| 11/4/2025 | Bought | 10 | $44.5450 |
| 11/4/2025 | Bought | 5 | $44.5190 |
| 11/4/2025 | Bought | 5 | $44.5450 |
| 11/4/2025 | Bought | 5 | $44.5800 |
| 11/10/2025 | Bought | 1 | $40.0000 |
| 11/10/2025 | Bought | 1 | $40.0000 |
| 11/13/2025 | Bought | 1 | $39.0000 |
| 11/13/2025 | Bought | 1 | $38.5000 |
| 11/14/2025 | Bought | 1 | $38.0000 |
| 11/14/2025 | Bought | 1 | $37.5000 |
| 11/14/2025 | Bought | 1 | $37.0000 |
| 11/14/2025 | Bought | 1 | $36.5000 |
| 11/14/2025 | Bought | 1 | $36.0000 |
| 11/18/2025 | Bought | 1 | $35.5000 |
| 11/18/2025 | Bought | 1 | $35.0000 |
| 11/19/2025 | Bought | 1 | $34.5000 |
| 1/12/2026 | Bought | 1 | $31.9000 |
| 2/9/2026 | Bought | 1 | $21.5000 |
| 2/13/2026 | Bought | 1 | $16.0000 |
| 5/13/2026 | Bought | 1 | $26.2581 |
| 5/13/2026 | Bought | 1 | $26.0000 |
| 5/14/2026 | Bought | 1 | $24.5000 |
| 5/14/2026 | Bought | 1 | $24.5000 |
| 5/14/2026 | Bought | 1 | $24.2500 |
| 5/14/2026 | Bought | 1 | $24.0000 |
| 5/14/2026 | Bought | 1 | $24.0000 |
| 7/8/2026 | Bought | 1 | $37.3000 |
| 7/8/2026 | Bought | 1 | $37.2000 |
| 7/8/2026 | Bought | 1 | $37.0000 |
| 7/8/2026 | Bought | 1 | $36.5000 |
| 7/8/2026 | Bought | 1 | $36.0000 |
| 7/9/2026 | Bought | 1 | $35.5000 |
| 7/9/2026 | Bought | 1 | $35.0000 |
| 7/17/2026 | Bought | 1 | $34.5000 |

| Settlement Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 7/27/2026 | Bought | 1 | $29.0000 |
| 7/27/2026 | Bought | 1 | $28.5000 |
| 7/27/2026 | Bought | 1 | $28.0000 |